### EDWARD D. RYDEEN v. COUNTY OF CLEARWATER AND OTHERS.[1]

February 8, 1918.

No. 20,752.

**County — approval of voters required for issue of bonds for court house.**
     Clearwater county now owns a court house and therefore cannot issue bonds for the erection of a new one without the approval at an election of a majority of the voters of the county. G. S. 1913, §§ 1854, 1855. G. S. 1913, § 1934, does not apply.

Action in the district court for Clearwater county to restrain the county commissioners from entering into a contract for the construction of a court house for the county. The case was tried before Stanton, J., who made findings and granted a permanent injunction. From an order denying their motion to amend the findings and conclusions or for a new trial, defendants appealed. Affirmed.

*E. E. McDonald* and *O. T. Stenvick,* for appellants.

*Montreville J. Brown* and *Emil T. Evenson,* for respondent.

[1]Reported in 166 N. W. 334.

BUNN, J.

Plaintiff is a taxpayer and resident of Clearwater county. He brought this action to enjoin the county commissioners, auditor and treasurer, from entering into a contract for the construction of a court house, and from issuing bonds to defray the cost of construction. The trial resulted in a decision for plaintiff, permanently restraining defendants from entering into a contract for the construction of a court house, and from issuing and selling the bonds of the county for the purpose of raising money for such construction, until the question whether such bonds shall be issued has been submitted to the voters of the county, and a majority have voted in favor of such issue. Defendants moved for amended findings and for a new trial, and appeal from an order denying this motion.

The question is whether the county could legally issue bonds for the construction of a court house, as its officers proposed to do, without the vote of a majority of the voters of the county. If Clearwater county does not now own a court house, it is conceded that it may, under G. S. 1913, § 1934, issue bonds to raise money to erect one without submitting the question to a vote of the people. If, however, Clearwater county now owns a court house, section 1934 does not apply, and sections 1852, 1854 and 1855, G. S. 1913, do. Under the provisions of the last named sections of the statute, the county could not issue bonds for the erection of a court house without the approval, first obtained, of a majority of the voters at an election at which the proposed issue is submitted for approval or rejection.

Therefore the question before us is:

Does Clearwater county now own a court house? If it does, the injunction was properly granted.

Insofar as the question is one of fact, the findings of the trial court, which we hold are amply sustained by the evidence, will be taken as the basis of our decision. They are in substance as follows:

August 22, 1905, the village of Bagley, county seat of Clearwater county, conveyed to the county by quitclaim deed lot 1, block 5 of Bagley, "so long as the same shall be used for court house and county purposes, and upon the cessation of said described premises being used for said purposes above mentioned, the title to said premises shall there-

upon revert to the party of the first part." No other or different con-veyance of said lot or the building then situated thereon has ever been made. The building was a two-story frame structure which had there-tofore been used by the village as a village hall and engine house. In the same year this building was, by residents of the village, removed from lot 1, block 5, to block 9, First Addition to the village of Bagley. This block was then and has been ever since owned by the county. The county commissioners constructed partitions in the building, so as to provide offices for county officials, placed therein additional doors, win-dows and chimneys, built a stone foundation under the building and constructed and added to the building two fire-proof vaults. The aggre-gate cost of these improvements was about $1,600. The building has ever since been used as a court house and has and does now provide offices for all of the county officers, except the sheriff, county attorney and superintendent of schools, and has on the second floor a large room which is used as a court room. The court found that this building was a court house and was owned by Clearwater county.

It is contended that the county does not own a court house for two reasons: (1) The character of the building and of its use by the county is not such as makes the building a court house; (2) the county does not own the building.

1. We will dispose of the first contention by saying that the building was a court house. It was not an ideal one, but it sufficed for 12 years. See Upton v. Strommer, 101 Minn. 97, 111 N. W. 956.

2. The claim that the court house was not owned by the county is based upon the fact that the building was originally standing on the lot conveyed by the village to the county by the deed containing the con-dition stated. The building seems to have been removed to its present location without any objection on the part of the village. The county practically remodeled it, and used it 12 years for a court house and county building without the slightest hint of objection from the village. The village is making no objection now, and we may safely assume that it never intends to, even if it could reasonably make some claim, which we doubt. We hold that the county owns the court house within the meaning of G. S. 1913, § 1934. Upton v. Strommer, supra.

It follows that the county officers were properly enjoined from issu-

ing bonds for the construction of a new court house without a favorable vote of the electors. The injunction is a bit broader than this however, restraining the erection of a court house. But it is not claimed that the county had funds in its possession applicable to this use, and G. S. 1913, § 1852, prevented incurring indebtedness without the issue of bonds. We see no reason for modifying the decision in the respect mentioned.

Order affirmed.

BROWN, C. J., took no part